UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CINDY BALMORES, et al., | CASE NO. C24-0886-KKE |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |
| v. | |
| SIRIUS XM RADIO INC, | |
| Defendant. | |

In this putative class action, Plaintiffs Cindy Balmores, Justin Braswell, Deborah Garvin, and Thea Anderson sue Sirius XM Radio Inc. ("Sirius") under Washington and Florida law for Sirius's marketing and business practices regarding its U.S. Music Royalty Fee. Sirius moves to dismiss each claim of the lawsuit. Dkt. No. 25. The Court finds that Plaintiffs have sufficiently alleged violations of Washington's consumer protection law and, in the alternative, the implied duty of good faith and fair dealing. But the Court lacks personal jurisdiction over Sirius for any claims arising under Florida law. The Court also dismisses Plaintiffs' request for injunctive relief regarding Sirius's advertising practices. Accordingly, the Court will grant in part and deny in part Sirius's motion.

## I. BACKGROUND[1]

Sirius provides subscription plans for "satellite radio music" and "internet-only streaming music." Dkt. No. 24 ¶ 19. This suit alleges that Sirius charges its customers a 21.4% "U.S. Music Royalty Fee" on top of the subscription plan price, without adequately disclosing or describing the fee. *Id.* Plaintiffs allege that Sirius's representations regarding its U.S. Music Royalty Fee in advertisements and the subscription and billing process violate the Washington Consumer Protection Act ("CPA") and the Florida Deceptive and Unfair Trade Practice Acts ("DUTPA"), or, in the alternative, the implied covenant of good faith and fair dealing. *Id.* ¶¶ 184–236.

In 2019, Plaintiff Cindy Balmores received an email from Sirius advertising a one-year music plan for $99. Dkt. No. 24 ¶ 68. Plaintiffs allege Sirius's marketing emails advertised a promotional rate that did not include the U.S. Music Royalty Fee. *Id.* ¶¶ 38–39. Plaintiffs also allege that after clicking a hyperlink, Sirius disclosed "fees and taxes apply" and directed customers to the online Customer Agreement. *Id.* ¶ 39. After seeing one of these emails, Balmores called Sirius and bought a yearly plan. *Id.* ¶¶ 69–70. Balmores alleges Sirius "quoted her the specific price of $99 for the one-year music plan subscription" that "did not include the cost of the U.S. Music Royalty Fee" and that Sirius "did not mention the existence of the U.S. Music Royalty Fee." *Id.* ¶ 69. For the next two years, Balmores called Sirius at the end of her subscription term and was quoted the same $99 yearly price, was not told about the U.S. Music Royalty Fee, and purchased a yearly plan. *Id.* ¶¶ 71–74. In 2022, Balmores called Sirius to purchase another one-year subscription for $99 but was told the promotion was no longer available. *Id.* ¶ 75. "Instead, the agent quoted her a specific monthly price for the music plan that she wanted" that "did not include the cost of the U.S. Music Royalty Fee." *Id.* Balmores purchased the new monthly plan

---

[1] This section assumes, in resolving the motion to dismiss, that the factual allegations in the complaint are true. *Edmonson v. City of Martinez*, 17 F. App'x 678, 679 (9th Cir. 2001).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS - 2

but canceled it after a few months. *Id.* ¶¶ 76–77. In 2024, after receiving a Sirius advertisement for $5 per month for six months,[2] Balmores called Sirius and was quoted the $5 monthly price, which did not include the U.S. Music Royalty Fee. *Id.* ¶ 78. Balmores purchased the monthly music plan subscription. *Id.* ¶ 79. Balmores has never received a billing notice or invoice from Sirius. *Id.* ¶ 80. Instead, Plaintiffs allege "[t]he only evidence of the ongoing monthly (or other subscription term) charges by Sirius XM that a subscriber would find was on his or her bank or credit card billing statement" or by logging onto "his or her customer account on the Sirius XM website[.]" *Id.* ¶¶ 57, 59.

In October 2022, Plaintiff Thea Anderson purchased a monthly Sirius plan after receiving a call from Sirius offering a promotional price of $5.99 per month for 12 months. Dkt. No. 24 ¶¶ 145–46. During this call, Sirius quoted the $5.99 price and "did not include the additional amount of the U.S. Music Royalty Fee" or "mention the existence of the U.S. Music Royalty Fee." *Id.* ¶ 145. In late 2023, Anderson called Sirius and purchased another music plan based on a "quoted and promised price [that] did not include the additional amount of the U.S. Music Royalty Fee." *Id.* ¶¶ 147–48. In early 2024, Anderson canceled her subscription. *Id.* ¶ 150. Anderson never received a monthly billing notice or invoice from Sirius. *Id.* ¶ 149.

In 2018, while living in Florida, Plaintiff Deborah Garvin received a call from Sirius that "offered her a paid subscription, where the first six months would be free, and she would thereafter be charged a specific monthly rate" and "[t]he quoted and promised price did not include the additional amount of the U.S. Music Royalty Fee, and Sirius did not mention the existence of the U.S. Music Royalty Fee." Dkt. No. 24 ¶ 121. Garvin signed up for the plan but before being

---

[2] Plaintiffs do not specify whether this advertisement was received by email or mail, but Plaintiffs allege both types of advertisements listed a price that did not include the U.S. Music Royalty Fee and stated that "fee and taxes apply," and directed customers to the online Customer Agreement. *See* Dkt. No. 24 ¶ 35.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS - 3

charged the monthly rate, Garvin canceled her subscription. *Id.* ¶¶ 122–23. Sirius then called Garvin and "offered her a promotional monthly price … [that] did not include the additional amount of the U.S. Music Royalty Fee … [and] did not mention the existence of the U.S. Music Royalty Fee." *Id.* ¶ 123. Garvin purchased the monthly plan (*id.* ¶ 124) and remained on that plan until 2022, when "[s]hortly after her move" to Washington, she canceled the subscription. *Id.* ¶¶ 126–27. At some point when living in Washington, Sirius called Garvin and "offered her a promotional monthly price … [that] did not include the additional amount of the U.S. Music Royalty Fee … [and] the agent did not mention the existence of the U.S. Music Royalty Fee." *Id.* ¶ 129. Garvin bought this plan. *Id.* ¶ 130. Sirius never sent Garvin a monthly billing notice or invoice. *Id.* ¶¶ 125, 131.

In June 2011, Plaintiff Justin Braswell visited Sirius's website to learn about its plans and pricing and allegedly saw a webpage similar to the 2023 version of the Popular Plans webpage included in the complaint. Dkt. No. 24 ¶ 95. That webpage listed the "**Introductory Pricing** Plus fees and taxes" for each type of plan, including the initial promotional price, and the subsequent non-promotional price. *Id.* ¶ 43. The offer details at the bottom of the page disclosed that "fees and taxes apply[.]" *Id.* ¶ 44. Braswell then entered his credit card information and purchased a monthly plan online. *Id.* ¶ 95. "Throughout the online purchase process, Sirius XM advertised and promised a specific monthly price … [that] did not include the amount of the U.S. Music Royalty Fee" or reference the U.S. Music Royalty Fee or its amount. *Id*. Plaintiffs allege the last page of the online purchase process included the following information:

> **STEP 3 OF 3**
>
> **Review and complete your order**
>
> **Order Summary**
>
> SiriusXM Platinum — $1.00
> 3 Months for $0.33/mo
>
> Fees and Taxes — $0.21
> Details ⌄
>
> **Total - Due Now — $1.21**
>
> Your estimated recurring monthly subscription charge will be $29.12 starting on 07/04/2023. Remember, you can change or cancel at any time.
>
> SiriusXM Platinum — $23.99
> Monthly Plan
>
> Fees and Taxes — $5.13
> Details ⌄
>
> **Total Due - 07/04/2023 — $29.12**
>
> Details ⌃
>
> ☐ Please charge my credit card for the amount due now and recurring charges as outlined above. By clicking "Complete My Order", I agree that my service will **AUTOMATICALLY RENEW and will be charged to my payment method at then-current rates at the time of each renewal, plus fees and taxes, until I cancel.** I agree to the SiriusXM Customer Agreement and Privacy Policy, including, receiving account notifications at the email address provided, the refund policy and how to cancel, which includes online methods or calling SiriusXM at 1-866-635-2349.
> En Español
>
> **COMPLETE MY ORDER**

*Id.* ¶ 46.[3]  The Offer Details at the bottom of the page stated:

> Activate a Platinum subscription and pay $1.00 for your first 3 months, a savings of 98% off the current monthly rate of $23.99, plus get free activation (an additional $15 savings). **A credit card is required on this offer. Fees and taxes apply. Service will automatically renew thereafter every month and you will be charged at then-current rates**. Please see our **Customer Agreement** for complete terms and how to cancel ….

*Id.*  Braswell went through this same process in 2013 and 2022. *Id.* ¶¶ 98–101, 103–106.  Braswell never received a monthly bill or invoice.  *Id.* ¶¶ 97, 102, 107.

---

[3] Neither Plaintiffs nor Sirius describes what is shown when the "Details" drop down under Fees and Taxes is selected.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS - 5

Plaintiffs allege that "[i]f a customer contacted Sirius XM to inquire about the Fee, Sirius XM had a practice of outright falsely telling the subscriber that it was 'government mandated' or was a government pass-through fee" and that the U.S. Music Royalty Fee "was not kept as profit." Dkt. No. 24 ¶¶ 60–61. Plaintiffs also assert "[b]uried disclaimers on Sirius XM's website also falsely indicated the Fee was a pass-through of a legitimate government charge from 'Congress' that 'Sirius XM is required by law to pay.'" *Id.* ¶ 63. Plaintiffs further allege that "the amount that Sirius XM collected in Fees was a large source of profit, and was greater than the amount Sirius XM actually paid out in music royalties." *Id.* ¶ 65. Each Plaintiff alleges they "want[] to be confident that any 'fees and taxes' charged for the plan are legitimate government pass-through charges versus simply a source of profit." *Id.* ¶¶ 84, 110, 134, 153.

Sirius now moves to dismiss Plaintiffs' Florida claims for lack of personal jurisdiction, the entire case under Federal Rule of Civil Procedure 12(b)(6), and the request for injunctive relief as moot. Dkt. No. 25. Plaintiffs responded (Dkt. No. 29), and Sirius replied (Dkt. No. 31). The Court held oral argument on June 24, 2025. Dkt. No. 37. The Court will consider each basis for dismissal in turn.

## II.  SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because Sirius is a citizen of Delaware and New York (Dkt. No. 24 ¶ 13), the putative classes each include at least one member that is not a citizen of Delaware or New York (*id.* ¶¶ 9–12), the amount in controversy exceeds $5,000,000 (*id.* ¶ 7), and each putative class would exceed 100 members (*id.*). 28 U.S.C. § 1332(d)(2), (5), (10).

### III. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiff Garvin sues Sirius under DUTPA, Florida's consumer protection law, and under Florida's good faith and fair dealing law. Dkt. No. 24 ¶¶ 208–225, 228. Sirius argues that the Court "has no personal jurisdiction over a Florida cause of action against Sirius XM for events that happened in Florida." Dkt. No. 25 at 22.

Garvin bears the burden to demonstrate that jurisdiction is appropriate. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) ("When a plaintiff relies on specific jurisdiction, he must establish that jurisdiction is proper for 'each claim asserted against a defendant.'" (quoting *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004))). To show Sirius is subject to this Court's specific jurisdiction[4] for the Florida claims, Garvin must allege:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities[.]

*Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1161–62 (9th Cir. 2023) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). If Garvin demonstrates both prongs, the burden shifts to Sirius to demonstrate that the exercise of jurisdiction would be unreasonable. *Id.* "The central concern of the federal inquiry is the relationship between the defendant, the forum, and the litigation." *Noll v. Am. Biltrite Inc.*, 395 P.3d 1021, 1026 (Wash. 2017).

For the first prong of the analysis, a court "should comprehensively evaluate the extent of the defendant's contacts with the forum state and those contacts' relationship to the plaintiffs' claims—which may mean looking at both purposeful availment and purposeful direction." *Davis*,

---

[4] Garvin does not argue Sirius is subject to this Court's general personal jurisdiction.

71 F.4th at 1162. A defendant purposefully directed its activities at the forum if it: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that [it] knows is likely to be suffered in the forum state." *Picot*, 780 F.3d at 1214. For the purposeful availment analysis, a court considers "whether a defendant has 'purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* at 1212 (quoting *Schwarzenegger*, 374 F.3d at 802).

Garvin argues "that Sirius XM in fact committed tortious acts in Washington with respect to the music plan that Plaintiff Garvin purchased in Florida." Dkt. No. 29 at 21. More specifically, Garvin argues that with respect to the subscription she purchased in Florida, she was charged the U.S. Music Royalty Fee while living in Washington and that Sirius failed to send her ongoing bills while she lived in Washington. *Id.* at 20–21. This argument fails factually and legally.

First, the only allegation in the complaint connecting Washington with the Florida subscription plan is that "[s]hortly after her move" to Washington, Garvin canceled her Florida plan. Dkt. No. 24 ¶ 127. There are no allegations Garvin was charged or should have received a bill during this unspecified time.

Second, even if Sirius had charged Garvin the U.S. Music Royalty Fee arising from her Florida plan and/or failed to send a bill while she lived in Washington, neither of these acts are directed at Washington itself. *Picot*, 780 F.3d at 1214 ("[The] personal jurisdiction analysis must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum."). As in *Picot*, Sirius's alleged actions and the injury they allegedly caused are "not tethered to [Washington] in any meaningful way. Rather [Garvin's] injury is entirely personal to [her] and would follow [her] wherever [she] may choose to live or travel." *Id.*; *see also Int'l Bus. Sols. Mktg. & Pub. Rels. Co. v. Univ. of Findlay*, No. C15-286MJP, 2015 WL 3948839, at *3 (W.D. Wash. June 26, 2015) ("[T]he 'commission of a tortious act' in Washington is not

established merely by showing that a resident of Washington has suffered a loss." (quoting *Oertel v. Bradford Tr. Co.*, 655 P.2d 1165, 1168 (Wash. Ct. App. 1982))).

In sum, Garvin fails to show Sirius purposefully directed any action regarding the Florida contract to Washington or that Sirius purposefully availed itself of the privilege of conducting business in Washington with respect to the Florida contract. Thus, there is no basis for the Court to exercise personal jurisdiction over Sirius for the DUTPA or Florida good faith and fair dealing claims and both are dismissed.

If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). The Court cannot determine that the deficiencies in Plaintiffs' claims "could not possibly" be cured. *Id.* Thus, the Court grants leave to amend.

## IV. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. Legal Standards

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court examines the complaint to determine whether, assuming the facts alleged are true, the plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A claim for violation of the CPA requires "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 994 (Wash.

2020) (quoting *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009)). Sirius argues that Plaintiffs fail to allege the first element, an unfair or deceptive act or practice. Dkt. No. 25 at 13–22. "[A] claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Young*, 472 P.3d at 994 (quoting *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013)). "To satisfy the first element of a CPA claim, a plaintiff need not show that they—or anyone—were in fact deceived." *Id.* (citing *Panag*, 204 P.3d at 894).

**B.      The Court Considers Limited Extrinsic Evidence.**

On a motion to dismiss, district courts typically consider only the pleadings "when assessing the sufficiency of a complaint[.]" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). But the district court has discretion to consider extrinsic evidence via the doctrine of incorporation by reference or judicial notice under Federal Rule of Evidence 201. *Id.* Sirius asks the Court to consider the following extrinsic evidence on its motion to dismiss under Rule 12(b)(6): the October 2021 Sirius XM Customer Agreement (Dkt. No. 27-2) and four demands for arbitration (Dkt. Nos. 27-3, 27-4, 27-5, 27-6).[5] The Court will consider the October 2021 Customer Agreement (Dkt. No. 27-2) because it is referenced throughout the complaint (Dkt. No. 24 ¶¶ 35, 39, 46) and Plaintiffs do not object or question its authenticity. *See United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011). The Court will also consider the demands for arbitration submitted by Sirius because they are referenced in the complaint (Dkt. No. 24 ¶¶

---

[5] Sirius also references the March 2025 U.S. Music Royalty Fee webpage (Dkt. No. 27-1) in its motion to dismiss the CPA claim (Dkt. No. 25 at 17), but this webpage is a version from March 31, 2025 (Dkt. No. 27 ¶ 3) and was not in effect at the time relevant for this analysis, so the Court does not consider it.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS - 10

89, 114, 138, 157) and Plaintiffs do not object or question their authenticity.  Dkt. Nos. 27-3, 27-4, 27-5, 27-6.

C.  **Plaintiffs' CPA Claim Is Sufficiently Pleaded.**

Plaintiffs allege the following practices are unfair or deceptive as they relate to the imposition of the U.S. Music Royalty Fee: 1) Sirius's advertisements that say "fees and taxes" may apply without providing more information about the nature of the U.S. Music Royalty Fee; 2) the online sign-up process where the U.S. Music Royalty Fee is described as "fees and taxes"; 3) the phone sign-up process where Sirius does not notify customers of the U.S. Music Royalty Fee; 4) Sirius's practice of automatically renewing subscriptions and not sending invoices;[6] and 5) Sirius's representations that the U.S. Music Royalty Fee is government mandated and not kept for profit. *See* Dkt. No. 24 ¶ 189; *see also* Dkt. No. 29 at 16.  Sirius argues the CPA claim fails because it "consistently told its customers exactly how much they would pay, inclusive of those fees and taxes" (Dkt. No. 25 at 14) and because the Customer Agreement "lays out the U.S. Music Royalty Fee in full."  Dkt. No. 25 at 14–19; Dkt. No. 31 at 6–7, 9.

1. The phone sign-up process can support a CPA claim.

Plaintiffs allege that "Sirius XM, as a matter of company policy, would not name or disclose the existence or amount of the U.S. Music Royalty Fee during the phone sign-up process." Dkt. No. 24 ¶ 53.  Plaintiffs also allege that Sirius quoted and promised prices to Balmores, Garvin, and Anderson that did not include the U.S. Music Royalty Fee.  *Id.* ¶¶ 69, 71, 73, 75, 78, 121, 123, 129, 145, 147.  And Balmores, Garvin, and Anderson allege they were "never told[] that Sirius XM would actually charge [them] an additional music plan charge on top of the advertised and quoted music plan price in the form of a so-called U.S. Music Royalty Fee or that the true price of

---

[6] Sirius does not address Plaintiffs' allegations that its automatic billing practices violate the CPA.  *See generally* Dkt. Nos. 25, 31.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS - 11

the music plan would include the additional cost of the U.S. Music Royalty Fee." *Id.* ¶¶ 82, 132; *see also id.* ¶ 151. Sirius disputes these allegations and claims that it always informed customers about the total amount of their subscriptions, including those fees and taxes. Dkt. No. 25 at 14. At this stage of the case, however, the Court must accept as true Plaintiffs' allegations, including that Sirius did not tell phone sign-up customers how much they would pay inclusive of fees and taxes. And to the extent Sirius argues the Customer Agreement or customers' online accounts informed phone sign-up customers of the full amount of their subscriptions at the time of purchase (Dkt. No. 25 at 16–17), Sirius cannot point to any allegations in the complaint to support this theory.[7]

Plaintiffs' CPA claims arising from the phone sign-up process survive the motion to dismiss.

    2. <u>The online sign-up process and the label "fees and taxes" can support a CPA claim.</u>

Turning to the online sign-up process, it is undisputed that Braswell, the only plaintiff to sign up online, was told the total price of his subscription, including all fees and taxes, at the time of his plan purchases in 2011, 2013, and 2022.[8] Dkt. No. 24 ¶¶ 46, 95, 99, 104. And unlike phone sign-up customers, Plaintiffs' screenshots and allegations regarding the online process demonstrate that users were directed to the Customer Agreement while signing up. *Id.* ¶ 46. But Plaintiffs argue the online sign-up process still violates the CPA because the label "fees and taxes" misleads customers into thinking the U.S. Music Royalty Fee is government mandated or not kept for profit. Dkt. No. 29 at 16–17. Sirius argues that even if the "fees and taxes" label during the

---

[7] Sirius reiterates throughout its briefing that Plaintiffs are bound by the 2021 Customer Agreement via their arbitration demands. Dkt. No. 25 at 17–18, 21, 26–27; Dkt. No. 31 at 5–7, 9. But Sirius fails to explain how Plaintiffs' 2024 arbitration demands impact their assent, or not, to the Customer Agreement at the time of sign-up.

[8] Sirius does not address the CPA's four-year statute of limitations (WASH. REV. CODE § 19.86.120) in its briefing and Plaintiffs allege the discovery rule applies to their claims (Dkt. No. 24 ¶ 165).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS - 12

online sign-up process is unclear, no reasonable consumer would be misled because the Customer Agreement "lays out the U.S. Music Royalty Fee in full." Dkt. No. 25 at 17–19.

The 2021 Customer Agreement[9] states "**Fees:** We may charge you one or more of the following fees, all of which are subject to change without notice: … **U.S. Music Royalty Fee:** Packages which include music channels may be charged a U.S. Music Royalty Fee. See www.siriusxm.com/usmusicroyalty." Dkt. No. 27-2 at 8. The Customer Agreement does not provide any substantive information, including the amount of the fee or when the fee is charged, and Sirius does not provide the text of whatever information is available at the hyperlinked page.[10]

In light of this disclosure (or lack thereof), the Court turns to whether the label "fees and taxes" itself can violate the CPA. The Court finds *Hall v. Marriott International, Inc.*, persuasive and that this aspect of the CPA claim survives the motion to dismiss.[11] No. 19-CV-1715 JLS (AHG), 2020 WL 4727069 (S.D. Cal. Aug. 14, 2020). In *Hall*, plaintiffs alleged, among other deceptive practices, that "Defendant includes mandatory resort fees within the broader heading of 'taxes and fees,' which leads consumers to believe the resort fees are government-imposed charges[.]" *Id.,* at *4. The court found this theory "the weakest of Plaintiff's alleged misrepresentations," but was nonetheless "not prepared to conclude at this stage as a matter of law that no reasonable consumer would be misled by Defendant's inclusion of the resort fee under the generic heading of 'Taxes and fees.'" *Id.*, at *9; *see also Riensche v. Cingular Wireless, LLC*, 496

---

[9] Sirius only provides the 2021 Customer Agreement, but Braswell signed up online in 2011 and again in 2013. Dkt. No. 24 ¶¶ 95, 99. There are no allegations or incorporated documents that provide the text of the Customer Agreements in effect at those times. Even if the Customer Agreement included the same U.S. Music Royalty Fee language during all relevant times, Plaintiffs' "fees and taxes" claim survives.

[10] Sirius only provides the March 2025 version of this webpage, which went into effect after this case was filed. Dkt. No. 27-1.

[11] "Washington's and California's consumer protection laws … appear to be substantially similar." *In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255, 1265 (W.D. Wash. 2023) (quoting *Wiseley v. Amazon.com, Inc*., 709 F. App'x 862, 863 (9th Cir. 2017)). Thus, although *Hall* addressed the California counterpart of the CPA, this case is nonetheless instructive here.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS - 13

F. App'x 760, 763 (9th Cir. 2012) ("The presence of Cingular's line-item surcharge on customer bills had the capacity to deceive a substantial portion of the public into thinking that the surcharge was legally permissible or even mandated by the government.").

The Court finds itself in the same position as the court in *Hall*. Plaintiffs may very well lose on this theory once the Court can properly consider the applicable disclosures. But, based on the pleadings alone, Plaintiffs adequately allege a CPA claim. *See also Gill v. Chipotle Mexican Grill, Inc.*, No. 8:24-CV-01672-FWS-JDE, 2025 WL 1443767, at *4 (C.D. Cal. May 19, 2025) (denying motion to dismiss when "Plaintiffs allege Chipotle misleads consumers into believing only a $1.00 delivery fee applies, when Chipotle actually hides additional service fees similar to the delivery fee under a 'Tax' or 'Tax & Fees' heading."); *Baek v. Marriott Int'l, Inc.*, No. 2:23-CV-05944-DSF-E, 2024 WL 5516302, at *2 (C.D. Cal. Mar. 14, 2024) ("Based on the location of the [Hotel Worker Protection Ordinance] fee a reasonable consumer could be misled to believe that the [] fee is a government-imposed fee.").

Sirius's cases do not compel a different result. Sirius cites *Smale v. Cellco Partnership*, 547 F. Supp. 2d 1181 (W.D. Wash. 2008), which dismissed a CPA claim alleging Verizon's fee labeled "Effect of City Tax" was deceptive. Dkt. No. 25 at 15. Sirius argues this case stands for the proposition that the mere labeling of a fee cannot support a CPA claim. The Court disagrees. The *Smale* court's conclusion that the label "Effect of City Tax" was not deceptive depended on Verizon's explicit disclosures that it could assess additional fees related to government costs. 547 F. Supp. 2d at 1185–89. Further, the plaintiff there did not dispute that the fee was related to a government cost, and Verizon explicitly warned such fees were not taxes, but Verizon charges. *Id*. The Washington Supreme Court has also held that an unfair or deceptive act *can* be based on a deceptively described or labeled fee. *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 13 (Wash. 2007) ("Integra engaged in an unfair or deceptive act or practice as a

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS - 14

matter of law when it labeled the surcharge it imposed on local business service customers a ["presubscribed interexchange carrier charge"].").

Sirius also relies on a statement in a footnote in *Carovillano v. Sirius XM Radio Inc.*, 715 F. Supp. 3d 564 (S.D.N.Y. 2024): "New York courts have been hesitant to allow consumer-protection claims based on a fee's *description* where the fee was clearly disclosed before purchase." *Id.* at 578 n.5. That statement does not apply in this case because it is disputed whether the U.S. Music Royalty Fee was adequately disclosed before purchase.

Accordingly, at this stage, Plaintiffs sufficiently allege the label "fees and taxes" used in its online sign-up process, without any other meaningful disclosure or explanation, could violate the CPA by misleading its customers into believing that the U.S. Music Royalty Fee is government mandated.

While Sirius does not separately attack the CPA claims arising from its advertising practices, because at least part of that claim is also based on Sirius's use of the term "fees and taxes" (Dkt. No. 24 ¶¶ 35, 38, 189), it also survives the motion to dismiss.

3. <u>The label "U.S." can support a CPA claim here.</u>

Plaintiffs also allege that Sirius violates the CPA by "[p]utting 'U.S.' in the beginning of the name of the U.S. Music Royalty Fee to falsely indicate to consumers that it is a government-related pass-through charge." Dkt. No. 24 ¶ 189(h). In moving to dismiss this claim, Sirius relies on the statement in *Carovillano* that "[i]t is implausible, without more, to claim that a reasonable consumer would read the prefix 'U.S.' in 'U.S. Music Royalty Fee' to connote that the Fee was federally mandated." 715 F. Supp. 3d at 578 n.5. The Court agrees that on its own, the "U.S." title of the fee does not violate the CPA. But when taken with Plaintiffs' allegation that Sirius would affirmatively tell subscribers that the U.S. Music Royalty Fee was in fact government

mandated (Dkt. No. 24 ¶ 61[12]), Plaintiffs' allegations eke across the plausibility line. Because Plaintiffs allege more than just the title of the fee as the basis for the CPA claim on this theory, the Court finds it is sufficiently pleaded at this stage. *See Smale*, 547 F. Supp. 2d at 1187 ("Customers who contacted Verizon with questions about the nature of the fee might have a claim if Verizon refused to provide such information or made misleading statements[.]").

**D.      The Implied Covenant of Good Faith and Fair Dealing Claim Survives.**

Plaintiffs allege a breach of the implied covenant of good faith and fair dealing "[t]o the extent any applicable contract could be read as granting Sirius XM discretion to impose the U.S. Music Royalty Fee[.]" Dkt. No. 24 ¶ 228. Sirius argues that this claim fails because the Customer Agreement allows it to charge this fee. Dkt. No. 25 at 27. Sirius is correct that "there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms." *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991). And while this claim may ultimately fail on a full record, on a motion to dismiss, the Court's analysis is limited to the allegations in the complaint. Here, the only Customer Agreement incorporated by reference in the complaint is the 2021 Customer Agreement. Dkt. No. 27-2. There is no record of each of the agreements that were in effect when Plaintiffs purchased their subscriptions between 2011 and 2021, nor any allegations about the terms of those agreements. Because the Court cannot analyze whether Sirius is acting in compliance with the contract, at this stage, the good faith and fair dealing claim survives Sirius's motion. *See Carovillano*, 715 F. Supp. 3d at 585 (denying motion to dismiss implied covenant claim "because it assumes a disputed

---

[12] In reply, Sirius argues that Plaintiffs fail to allege they were personally told the fee was government mandated (Dkt. No. 31 at 10). This argument should have been raised in the motion and not saved for reply. But the argument is also irrelevant to the alleged lack of an unfair or deceptive act, the only point for which Sirius raises it. That said, this issue may be relevant to future motions and Sirius may raise it as appropriate in later stages of this case. *See Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 555 (W.D. Wash. 2008) (analyzing a similar argument at the class certification stage after reserving on the issue when it was raised on a motion to dismiss), *certification withdrawn*, No. C07-0475 MJP, 2009 WL 413509 (W.D. Wash. Feb. 18, 2009).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS - 16

conclusion: that there *is* a binding contract between Sirius XM and the plaintiffs that encompasses a customer obligation to pay the U.S. Royalty Fee").

## V. MOTION TO DISMISS INJUNCTIVE RELIEF

Plaintiffs seek to enjoin Sirius from:

> falsely advertising the prices of its music plans and from concealing the true prices of its music plans in its advertising; … from advertising or quoting a music plan price to members of the general public if that price does not include all applicable discretionary ongoing service charges (such as the U.S. Music Royalty Fee); … from representing or stating to members of the general public that the U.S. Music Royalty Fee is any of the following: (a) a 'government mandated' fee; (b) a government pass-through fee; (c) a tax; or (d) a charge over which Sirius XM has no control; … [and] from representing or stating that the U.S. Music Royalty Fee is a pass-through fee when in fact it is a source of Sirius XM's profits[.]

Dkt. No. 24 at 49. Sirius argues this request is moot because "Sirius already changed its advertising practices." Dkt. No. 25 at 28. Sirius relies on the declaration of its Chief Subscription Revenue Officer (Dkt. No. 26) and its U.S. Music Royalty Fee webpage (Dkt. No. 27-1) to support its mootness argument.[13]

The Court finds that Sirius's current "all-in pricing" practice moots Plaintiffs' request for injunctive relief related to advertising because the "all-in pricing on all advertisements for its subscriptions nationwide … includes the U.S. Music Royalty Fee." Dkt. No. 26 ¶ 5. Thus, the basis for Plaintiffs' CPA claims regarding advertising, whether based on a failure to advertise the full price or an allegation that the term "fees and taxes" is deceptive, do not support a "real and immediate" threat of repetition. *See Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 838–39 (E.D. Cal. 2024) (citing *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)).

---

[13] The Court considers these documents because Sirius seeks dismissal of the request for injunctive relief under Federal Rule of Civil Procedure 12(b)(1), which allows the Court to consider extrinsic evidence. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Although Sirius did not actually cite Rule 12(b)(1) in its brief, which would have been the proper practice, the evidence was submitted with the motion and Plaintiffs were given an opportunity to respond at oral argument. Further, because Plaintiffs do not dispute the accuracy of the declaration or authenticity of the webpage, or otherwise request to submit contrary evidence, the Court considers the declaration.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS - 17

The Court grants Sirius's motion as to the injunctive relief for advertising practices, but the remaining request for injunctive relief survives. The Court also grants Plaintiffs leave to amend. *See Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1085–86 (N.D. Cal. 2014) (granting leave to amend after dismissing claims for injunctive relief under Rule12(b)(1)).

## VI. CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss. Dkt. No. 25.

The Court dismisses the DUTPA claim and Florida good faith and fair dealing claim with leave to amend. The Court also dismisses Plaintiffs' request for injunctive relief regarding its advertising practices with leave to amend.

The remainder of the motion is denied.

Plaintiffs may file an amended complaint by August 13, 2025.

Dated 14th of July, 2025

Kymberly K. Evanson
United States District Judge